# EXHIBIT A



# GLASS LEWIS

## PROXY RESEARCH AND VOTING
## SERVICES AGREEMENT

This Proxy Research and Voting Services Agreement ("Agreement") dated as of July 1st, 2016 ("Effective Date") is entered into by and between State Board of Administration of Florida, with an address at 1801 Hermitage Blvd Suite 100, Tallahassee, FL 32308 ("Client") and Glass, Lewis & Co., with offices at One Sansome Street, 33rd Floor, San Francisco, CA 94104 ("Glass Lewis") (hereinafter Client and Glass Lewis shall be jointly referred to as the "Parties" and each shall be referred to as a "Party" individually).

### 1. SERVICES
1.1 During the Term, subject to the terms and conditions of this Agreement, Client agrees to purchase from Glass Lewis, and Glass Lewis agrees to provide to Client, the services and materials set forth in the Price Quote ("Online Services"). As part of the provision of the Online Services, Glass Lewis hereby grants Client a nonexclusive, nontransferable, limited corporate license to: (i) access and use Glass Lewis' research-delivery platform and proxy voting system; (ii) electronically display Glass Lewis' research and vote recommendations on proxy proposals ("Materials"); and (iii) download and printout the Materials.

1.2 Client acknowledges and agrees that the Materials shall be exclusively for internal use by Client solely for the purpose of analyzing proxy statements, assessing the corporate governance standards of companies and casting proxy votes, and may not be used for any other purpose, or be made available, in whole or in part, by Client to any other person or included in any materials or information that Client makes available to any other person, without the express prior written consent of Glass Lewis.

1.3 All right, title and interest, including all copyrights and other intellectual property rights, in the Materials, in both print and machine-readable forms, belong to Glass Lewis and its third party suppliers. Client acquires no proprietary interest in the Materials by virtue of this Agreement.

1.4 Client acknowledges and agrees that, subject to the confidentiality obligations of Glass Lewis under Section 7 hereof, Glass Lewis may monitor Client's use and distribution of the Materials for purposes of ensuring compliance with this Agreement and/or for purposes of altering or enhancing Glass Lewis' products and services for the benefit of Client or others.

### 2. TERM
2.1 This Agreement shall expire sixty (60) months after the Effective Date ("Initial Term"). Thereafter, Client shall have the right to renew this Agreement for two (2) successive additional terms (each a "Renewal Term" and together with the Initial Term,

SBA Contract No. 0 1 6 5 6

the "Term") upon written notice to Glass Lewis, thirty (30) days prior to the expiration of the Term. For each Renewal Term, Glass Lewis reserves the right to increase Client's unit rate fees by up to four percent (4%).

## 3. PAYMENT
3.1 All subscription fees, together with applicable taxes, are payable annually in advance, as set forth in the attached pricing addendum ("Price Quote").

## 4. DUTIES OF CLIENT
4.1 Client shall provide Glass Lewis, on a timely basis, with any and all documents, information and materials necessary for the performance of the Online Services, in a format reasonably acceptable to Glass Lewis. This information shall include, but shall not be limited to, a list of Client's accounts and portfolio holdings, any proxy cards and authorization letters to custodian banks or their agents required for the performance of the Online Services, as well as any special voting instructions. Client is solely responsible for: (i) keeping the aforementioned information up-to-date; and (ii) ensuring that any and all special voting instructions be delivered to Glass Lewis in writing and in a clear and concise format with a one-word recommendation (e.g. FOR, AGAINST or ABSTAIN) for each individual agenda item listed on a Glass Lewis (Viewpoint) ballot. In no event shall Glass Lewis be held liable for any damages resulting from inaccurate, incomplete or obsolete data; or from any ambiguous voting instructions delivered to Glass Lewis by Client or its custodian banks or agents.

4.2 Client shall ensure that all ballots, domestic and global, are delivered to Glass Lewis, directly or through its custodians or their agents, in a timely manner and in a format reasonably acceptable to Glass Lewis.

4.3 It is understood that, in markets that require share blocking, account re-registration, share immobilization, wet signatures, physical representation or any other additional steps or impediments to voting, Glass Lewis shall refrain from submitting proxy votes on Client's behalf, unless previously agreed to by the Parties. Glass Lewis shall not be directly or indirectly responsible for the preparation, certification, authentication or legalization of any market-specific documents empowering a third-party to participate, act or vote on behalf of Client, including but not limited to consents, approvals or powers of attorney, required by various custodians, sub-custodians or local market regulatory agencies.

## 5. REPRESENTATIONS AND LIMITED WARRANTY
5.1 EXCEPT AS OTHERWISE PROVIDED HEREIN, THE ONLINE SERVICES AND MATERIALS ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS.  GLASS LEWIS AND ITS SUPPLIERS EXPRESSLY DISCLAIM ALL WARRANTIES IN AND TO THE ONLINE SERVICES AND MATERIALS. NEITHER GLASS LEWIS NOR ITS SUPPLIERS WARRANT THE ACCURACY, COMPLETENESS, OR FITNESS FOR A PARTICULAR PURPOSE OF THE MATERIALS.

5.2 Client acknowledges and agrees that Glass Lewis is a proxy research firm that provides its clients with research and vote recommendations on proxy proposals. Glass Lewis does not provide investment advice and the Materials do not contain any

2

investment advice as to the value of securities or other property. Glass Lewis merely analyzes the issues presented for shareholder vote and makes recommendations as to how investors should vote their proxies, without commenting on the investment merits of the securities issued by the subject companies. Therefore, none of Glass Lewis' proxy vote recommendations should be construed as a recommendation to invest in, purchase, or sell any securities or other property. Client further acknowledges and agrees that Glass Lewis is a service provider that performs the ministerial actions related to voting in accordance with the written voting instructions provided to Glass Lewis by Client. Glass Lewis does not manage or administer any assets on behalf of its clients or their clients, and does not have, or exercise, discretion or control with regard to the voting of its clients' proxies (i.e. Glass Lewis does not itself make the ultimate decision about how its clients' proxies are to be voted). As a result, nothing contained in this Agreement shall grant fiduciary status to Glass Lewis under the Employee Retirement Income Security Act of 1974 ("ERISA").

5.3 Client agrees and acknowledges that Client: (i) possesses sufficient experience and knowledge to make its own investment decisions entirely independent of the Materials; (ii) uses its own judgment prior to making investment choices; and (iii) is not relieved from any fiduciary duties owed to its clients under ERISA by entering into this Agreement with Glass Lewis.

## 6. LIMITATION OF LIABILITY

6.1 Glass Lewis, its affiliates, and any supplier, officer, director, employee, subcontractor, agent, successor or assign thereof ("Covered Party"), shall not be liable for any loss, injury, claim, liability or damage of any kind arising out of or relating to: (a) the provision of the Online Services, as well as the content of the Materials, including any errors or omissions; (b) any decision made or action taken or unable to be taken by Client, its clients or anyone else in reliance on the Materials; (c) the unavailability, interruption, or delay of the Online Services and/or Materials; (d) Client's use of the Online Services and Materials; (e) any delay or failure in performance beyond the reasonable control of a Covered Party, such as, but not limited to, war, strikes, fires, floods, acts of God, governmental restrictions, power failures, or damage or destruction of any network facilities or servers; (f) the failure by Client or any third-party, including but not limited to Client's custodians, to comply with Sections 4.1, 4.2 and 4.3; or (g) the failure in transmittal of Client's voting instructions. The foregoing limitation of liability shall not apply if any such loss, injury, claim, liability or damage is attributable to a Covered Party's gross negligence, willful misconduct or violation of law.

6.2 FOR ANY CLAIM WHICH MAY ARISE UNDER THIS AGREEMENT, CLIENT'S SOLE REMEDY SHALL BE LIMITED TO MONEY DAMAGES IN AN AMOUNT NOT TO EXCEED THE AMOUNT DUE HEREUNDER.

6.3 THE COVERED PARTIES SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES, UNDER THIS AGREEMENT.

## 7. CONFIDENTIALITY

3

7.1 Both Client and Glass Lewis understand and agree that in the performance of this Agreement each Party may have access to confidential information of the other Party. Any such information that is designated as confidential by the disclosing Party in writing, or disclosed orally, including all Client account information and portfolio holdings, shall be deemed "Confidential Information" hereunder.  Each Party agrees that: (i) all Confidential Information shall remain the exclusive property of the owner; (ii) it shall maintain, and shall use prudent methods to cause its employees and agents to maintain the confidentiality and secrecy of the Confidential Information; (iii) it shall use the Confidential Information only for the purposes of this Agreement in connection with the Online Services; (iv) it shall not, and shall use prudent methods to ensure that its employees and agents do not, copy, publish, disclose to others or use (other than pursuant to the terms hereof) the Confidential Information; and (v) it shall return or destroy all copies of Confidential Information upon request of the other Party (however, if and to the extent that a Party is required by applicable law or corporate governance or recordkeeping policies to retain any Confidential Information, such Party will be permitted to keep and maintain Confidential Information in accordance with such law or policies (provided that those materials will remain subject to this Agreement, notwithstanding any termination of this Agreement)).  Notwithstanding the foregoing, Confidential Information shall not include any information to the extent it: (i) is or becomes a part of the public domain through no act or omission on the part of the receiving Party; (ii) is disclosed to third parties by the disclosing Party without restriction on such third parties; (iii) is in the receiving Party's possession, without actual knowledge of an obligation of confidentiality with respect thereto, at or prior to the time of disclosure under this agreement; (iv) is disclosed to the receiving Party by a third Party, who, to the knowledge of the receiving party, does not have an obligation of confidentiality with respect thereto; (v) is independently developed by the receiving Party without reference to the disclosing Party's Confidential Information; (vi) is independently developed by the receiving Party without reference to the disclosing Party's Confidential Information; (vii) is released from confidential treatment by written consent of the disclosing Party; or (viii) is required to be disclosed pursuant to a valid court order, arbitration proceeding or decision, or a valid administrative or regulatory decision, proceeding, request, or examination.

7.2 Both parties acknowledge that this agreement is subject to the Florida Public Records Law, Chapter 119, Florida Statutes. In particular, the Glass Lewis shall:
   (a) Keep and maintain public records required by the SBA in order to perform the services under this Agreement;
   (b) Upon request from the SBA' custodian of public records, provide the SBA with a copy of the requested records or allow the records to be inspected or copied within a reasonable time at a cost that does not exceed the cost provided in Chapter 119, Florida Statutes or as otherwise provided by Florida law;
   (c) Ensure that public records that are exempt or confidential and exempt from public records disclosure requirements are not disclosed except as authorized by law for the duration of the term of the Agreement and following completion of the Agreement if the Glass Lewis does not transfer the records to the SBA; and
   (d) Upon completion of the Agreement, transfer, at no cost, to the SBA all public records in the Glass Lewis's possession or keep and maintain public records required by

4

the SBA to perform the service. If the Glass Lewis transfers all public records to the SBA upon completion of the Agreement, the Glass Lewis shall destroy any duplicate public records that are exempt or confidential and exempt from public records disclosure requirements. If the Glass Lewis keeps and maintains public records upon completion of the Agreement, the Glass Lewis shall meet all applicable requirements for retaining public records. The Glass Lewis shall provide all records that are stored electronically to the SBA, upon request from the SBA's custodian of public records, in a format that is compatible with the information technology systems of the SBA.

**7.3 IF THE GLASS LEWIS HAS QUESTIONS REGARDING THE APPLICATION OF CHAPTER 119, FLORIDA STATUTES, TO THE GLASS LEWIS'S DUTY TO PROVIDE PUBLIC RECORDS RELATING TO THIS AGREEMENT, CONTACT THE CUSTODIAN OF THE PUBLIC RECORDS AT:**
**STATE BOARD OF ADMINISTRATION OF FLORIDA**
**POST OFFICE BOX 13300**
**TALLAHASSEE, FLORIDA  32317-3300**
**(850) 488-4406 email: SBAContracts_DL@sbafla.com**

8. MISCELLANEOUS
8.1 During the Term and for a period of six (6) months after the termination of this Agreement, Client agrees that it will not, directly or indirectly, solicit or attempt to solicit for employment any of Glass Lewis' employees; *provided, however*, that the foregoing shall not prohibit any general solicitation of employees that is not targeted at such persons nor any hiring resulting from such solicitation. Client acknowledges that any violation of this Section 8.1 would adversely affect Glass Lewis and its business. Accordingly, for any violation of this Section 8.1, Client will pay liquidated damages to Glass Lewis in a sum equal to one hundred percent (100%) of the solicited employee's existing annual base salary.

8.2 In the event that Client is in breach of any of Client's obligations hereunder, Glass Lewis may: (a) suspend, discontinue or terminate this Agreement; and (b) pursue any other remedy available to it.

8.3 Neither Party may assign its rights or delegate its duties under this Agreement without the prior written consent of the other Party; provided, however, that either Party may assign or transfer the aforementioned rights, pursuant to a merger, consolidation, or sale of substantially all of such Party's business or assets.

8.4 This Agreement, together with any appendices, exhibits, and schedules, constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements between the Parties in connection therewith.

8.5 No changes, modifications or waivers regarding this Agreement shall be binding unless in writing and signed by the Parties hereto.

8.6 These Terms and Conditions and all provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

8.7 Notwithstanding the foregoing, all parties agree and understand that all disclaimers and limitations of liability and remedies granted in this agreement are made and granted only to the fullest extent permitted by the laws of the State of Florida.

8.8 (a) During the term of and for a period of one (1) year after the expiration or termination of this Agreement, the SBA shall have the right to have any person or entity, previously approved by Glass Lewis (such approval shall not be unreasonably withheld) and designated by the SBA, including an independent public accountant or auditor and/or any federal or state auditor, to inspect, review and/or audit, any books, records and supporting documents relating to the provision of the Online Services and Materials to the SBA (the "Records"). In the event such right is exercised and upon no less than ten (10) business days' prior written notice from the SBA, Glass Lewis agrees to permit reasonable access to its premises and the Records during Glass Lewis' normal business hours. The SBA shall have the right, in connection with any such inspection, review and/or audit, to have one or more members of its staff present at all times. All individuals with access to the premises and the Records must have signed Glass Lewis' standard Non-Disclosure Agreement, subject to Florida Law, prior to commencing any inspection, review and/or audit. During the term of and for a period of six (6) years after the expiration or termination of this Agreement (or such longer period of time that may be required by any applicable law relating to the retention of the Records), Glass Lewis shall maintain and retain the Records, at its sole expense. In the event the SBA and/or its designees are in the process of conducting such an inspection, review and/or audit upon expiration of the one (1) year access period described herein, then this Section 8.8 shall survive in its entirety until the conclusion of such inspection, review and/or audit, in the SBA's or the SBA's designee's reasonable determination. For the avoidance of doubt, the scope of any inspection, review and/or audit under this Section 8.8 may include, without limitation, Glass Lewis' compliance with the terms of this Agreement and compliance with any applicable foreign, federal, state and/or local law or regulation. It shall not, however, include any information relating to any other Glass Lewis clients, any of Glass Lewis' financial information or financial statements, or any information unrelated to this Agreement.

(b)Glass Lewis shall use best efforts to cooperate with the SBA and any person or entity designated by the SBA in connection with any inspection, review and/or audit under this Section 8.8 including, without limitation, causing its relevant and knowledgeable employees and/or representative to be available to assist and to respond to reasonable inquiries and requests of the SBA and/or its designees under this Section. Glass Lewis shall respond (including, if relevant and appropriate, an action plan) within a reasonable time to any reports, finding and/or assessments provided to Glass Lewis by the SBA and/or its designees, and Glass Lewis shall provide a copy of all such responses to the SBA (including the SBA's management contact at sbageneralcounsel@sbafla.com). Glass Lewis acknowledges and agrees that any such report, finding and/or assessment are intended for the sole use and for the benefit of the SBA.

6

(c) Except as set forth herein, the SBA shall bear the costs of any inspection, review and/or audit described in this Section 8.8.   However, in the event, the SBA and/or its designees conclude that Glass Lewis engaged in or committed (including through acts or omissions) any fraud, misrepresentation and/or material non-performance, and Glass Lewis is unable to provide a reasonable alternate remedy within thirty (30) days of the SBA's written notification to Glass Lewis of the discovery of any such event, then Glass Lewis shall be obligated to reimburse the SBA for the  total costs of inspection, review and/or audit within ninety (90) days of the SBA's request for reimbursement thereof. Glass Lewis' reimbursement obligation herein shall be in addition to all other rights, remedies and damages available to the SBA at law or in equity, which shall not be deemed or waived or relinquished in any way because of Glass Lewis' additional reimbursement obligations hereunder.

STATE BOARD OF ADMINISTRATION OF FLORIDA:    GLASS, LEWIS & Co.:

NAME: Ashbel C. Williams

NAME: Jeffrey Thompson

TITLE: Executive Director & CIO

TITLE: SVP, Sales & Marketing

APPROVED AS TO LEGALITY:

CRAIG A. MEYER
ASSISTANT GENERAL COUNSEL

7



# GLASS LEWIS

**PROXY RESEARCH AND VOTING
SERVICES AGREEMENT**

*Price Quote*

Client: State Board of Administration of Florida

For the period of five (5) years beginning on July 1st, 2016 and ending on June 30th, 2021, Glass Lewis shall provide Client with the Online Services and Materials set forth below:

| Online Services and Materials | Annual Price (U.S. Dollars) |
|---|---|
| **Proxy Research:**<br><br>➤ Access to 2800 U.S. Proxy Paper reports<br>➤ Access to 7500 non-U.S. Proxy Paper reports | |
| **Voting Services:** Account set-up, vote execution, reporting and record-keeping, in accordance with the following client-specific parameters:<br><br>➤ 80 Institutional Accounts<br>➤ Up to 24630 ballot submissions<br>➤ Web Disclosure<br>➤ Application of SBA's custom proxy voting policy | |
| **Additional Services:**<br><br>Access to Glass Lewis' Proxy Talk conference call series | |
| **TOTAL ANNUAL FEES:** | **$192,653** |

8

THE PRICING ABOVE IS A FIXED FEE, SO THERE WILL BE NO OVERAGE FEES APPLIED DURING THE TERM OF THE CONTRACT. ALL CHARGES ARE IN U.S. DOLLARS AND ARE EXCLUSIVE OF ANY STATE OR LOCAL SALES, USE, OR SIMILAR TAXES. PAYMENT IN FULL IS DUE WITHIN THIRTY (30) DAYS OF THE DATE OF INVOICE. INVOICING WILL BE DONE ON A SEMI-ANNUAL BASIS ON JULY 1ST AND JANUARY 1ST OF EACH YEAR.